1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - X

PATRICIA GERESSY, et al., :

         Plaintiffs, :

  -against-

               :

DIGITAL EQUIPMENT CO.,
        Defendant.   :

- - - - - - - - - - - - X

CV-94-1427
  (JBW)

United States Courthouse
Brooklyn, New York

December 18, 1997
2:30 o'clock p.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JACK B. WEINSTEIN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:

LEVY PHILLIPS & KONIGSBERG
520 Madison Avenue
New York, New York  10022
BY:  STEVEN PHILLIPS, ESQ.
STEPHENIE LANNIGAN BROSS, ESQ.
      - and -
LIPSITZ GREEN SAHRINGER
ROLL SALISBURY & CAMBRIA
42 Delaware Avenue
Buffalo, New York  14202
BY:  RICHARD SOLOMON, ESQ.

For the Defendant:

BROBECK PHLEGER & HARRISON LLP
1633 Broadway 47th Floor
New York, New York  10019
BY:  KENNETH J. KING, ESQ.
CHARNA L. GERSTENHABER, ESQ.

Court Reporter:
**Certified Realtime Reporter**

Compuserve UserID: 102076,147
Proceedings recorded by mechanical stenography, transcript
produced by CAT.

Diana Pereira, RPR-CSR
225 Cadman Plaza East
Brooklyn, New York
Tel. (718) 260-2600  x6621

D. Pereira, OCR

2

1          THE COURT:  Civil cause for order to show cause,

2   Patricia Geressy et al versus Digital Equipment Company, et

3   al.

4          THE COURT:  A number of these cases have been

5   assigned to me for trial by Judge Hurley.  There has been

6   another case started.

7          MR. PHILLIPS:  Yes, your Honor.  That would be cases

8   involving two plaintiffs, Baur and Fletcher.  I can give you

9   the civil number.

10          THE COURT:  Why so late?

11          MR. PHILLIPS:  They were recently brought to our

12   attention.  That is why.

13          MR. KING:  As far as we know, we haven't been served

14   yet.  I know the existence of those cases.

15          THE COURT:  I would like to try all the remaining

16   cases together, not consolidated, but try them together, if it

17   is desirable to do so.

18          What is the plaintiffs' view?

19          MR. PHILLIPS:  Your Honor, in our view, I think it

20   would be logical and desirable to do that.

21          THE COURT:  How many plaintiffs will we have?

22          MR. PHILLIPS:  Including Patricia Geressy, there are

23   eight involved who are represented by my firm, and then the

24   Lipsitz Green firm have three.  There are eleven total.

25          THE COURT:  Those scheduled now by Judge Hurley for

D. Pereira, OCR

3

1    trial constitute all the pending cases in the court?

2             MS. BROSS:   Against Digital alone.

3             MR. PHILLIPS:   That is not correct.

4             MR. KING:   That is not correct.

5             MR. PHILLIPS:   There are other cases in which

6    Digital is a co-defendant.  As I understood the logic of

7    things, these represent cases in which Digital is the only

8    defendant, and therefore you don't have the complications.

9             THE COURT:  I don't want any complications.  How many

10   co-defendant cases are there?

11            MR. PHILLIPS:   I don't know the answer to that off

12   the top of my head.  Perhaps defendant's counsel would have a

13   better handle.

14            MR. KING:   I think four, maybe five.  I could get

15   you that information.

16            THE COURT:  Okay.  What is there pending in the

17   Southern District against Digital alone?

18            MR. KING:   One is a Statute of Limitations motion

19   pending.  It is clearly dismissable under the new Statute of

20   Limitations rule.

21            THE COURT:  Who is that before?

22            MR. KING:   Judge Mukasey now.  That sits with motion

23   pending.  I think there is one live case.

24            MR. PHILLIPS:   That sounds correct.  I haven't

25   checked that, but that sounds correct.

D. Pereira, OCR

4

1        MR. KING:   There are two others where a Statute of

2   Limitations motion has already been granted.   Because they are

3   codefendants, the case moves forward, but not against Digital,

4   because Digital has already been dismissed.   May I also say

5   that your Honor's order -- this is a preliminary matter, your

6   Honor's order to show cause --

7        THE COURT:   I want to get the facts, if I may, and

8   then I will, of course, I will hear you and hear anything you

9   or anybody else wishes to say.

10        What is pending in the State against Digital?

11        MR. KING:   If you want exact numbers, I would have

12   to get them for you.   It is around -- the reason I hesitate,

13   your Honor, because the new Statute of Limitations rule

14   affects the numbers.

15        THE COURT:   Of course.

16        MR. KING:   I can't give you exact numbers.

17        THE COURT:   Roughly.

18        MR. KING:   If you are saying, after all is said and

19   done, based on only the pleadings, whether the Statute of

20   Limitations rule will play or not, my estimate is that will

21   leave in -- and discovery might prove that more of those are

22   dismissable under Blanco -- ten cases.

23        MR. PHILLIPS:   I have the impression that there are

24   rather more than that.   Again, I haven't done the nose count.

25        THE COURT:   Okay.   I think this court is ready to

D. Pereira, OCR

5

1   clear its decks of these cases.  They have been pending a long

2   time.  These are '92, '93, '94.  However, if you are going to

3   bring '97, '98 cases, there is no possible way of clearing the

4   decks.  I am not interested in having a run of cases come into

5   the court.  I am interested in clearing the court's calendar.

6           What is the position?  Are you bringing in new cases,

7   or is this the end?

8           MR. SOLOMON:   This is the end for us.

9           THE COURT:  What about your firm?

10          MR. PHILLIPS:   We have no intention of bringing

11  additional cases at this time.  I can't ethically say it will

12  never happen.  It is certainly not our intention.  With

13  respect to --

14          THE COURT:  No.  This last case, how are they going

15  to get set for trial and disclosure completed within a

16  reasonable time?

17          MR. PHILLIPS:   Your Honor, I think there should be

18  no difficulty at all in getting medical records.  We need no

19  disclosure.  They are going to need to depose these

20  individuals, conduct a physical, which in fact they have to do

21  with some of these other folks as well.  It shouldn't be

22  terribly onerous, in my judgment, for the defendants to take

23  the depositions of these two individuals, obtain their medical

24  records, do a physical and be ready to go?

25          MR. PHILLIPS:   What is their situation?  They

D. Pereira, OCR

1   haven't received a summons.  Describe the case, please.

2          MR. PHILLIPS:   I have a copy of the complaint which

3   I think I have already sent to defendant's counsel, so that

4   they have it.

5          The two ladies in question, one worked as a data

6   entry worker at a medical laboratory, and the other, also, at

7   New York Hospital, was a medical secretary, which makes the

8   work akin, as you will recall, to what Mrs. Rotolo did.  They

9   both have had carpal tunnel surgeries recently.  The medical

10  records are all fresh.  Both worked on the LK-201 in one

11  instance and 401 in the other.  Your Honor will recall those

12  are reasonably fungible keyboards.  There was testimony about

13  that.  It is subject of ample discovery.  They are really

14  plain vanilla cases.

15         These are two ladies whose cases we knew would, if

16  Blanco had been affirmed, your Honor, these cases would have

17  been time barred because they started using the keyboards more

18  than three years ago.  Under any other view of life, they were

19  going to be timely.  Once the Court of Appeals ruled, we put

20  them into suit because they are seriously injured

21  individuals.  We do not have a stockpile of these, if your

22  Honor is concerned about --

23         THE COURT:  I want to clear the decks here.  It is

24  not my purpose to have a lot of cases piled in.

25         MR. PHILLIPS:   I appreciate that.  That is not our

D. Pereira, OCR

1  purpose.  We had undertaken to represent these two

2  individuals, had explained the reality of the Statute of

3  Limitations.  When the decision came in a form that plainly

4  made them timely, we filed the cases.

5      THE COURT:  Okay.  I cut you off.

6      MR. KING:   Just a preliminary matter.  Your Honor's

7  order to show cause states that you want before you cases not

8  already set for trial before Judge Hurley.  That's what your

9  Honor said.

10     THE COURT:  That's right.  Whatever he is trying, let

11  him try.  Whatever is left, I would like to be tried and

12  disposed of by motion or trial.

13     MR. KING:   One of those cases is the Gonzalez case

14  which has already been set for trial.

15     THE COURT:  By whom?

16     MR. KING:   Judge Hurley.  It was apparently

17  transferred in error.  That shouldn't be part -- we all have

18  that same order.  In fact, your Honor has it in the stack

19  right before you.  We have attached to our papers in fact

20  Exhibit B --

21     THE COURT:  Why don't you take-- if he has a clerk

22  assigned to this, take it up to that clerk.  Either modify the

23  order or -- My clerk is mentioning Judge Caden accomplished

24  this deliberately because Judge Hurley consents.

25     MR. KING:   I don't know that.  I know what your

8

1  Honor's order says, and I know this one has already been set

2  for trial.

3          THE COURT:  For when?

4          MR. KING:   April.

5          THE COURT:  Is it prior to my order or after?

6          MS. GERSTENHABER:  November 18.

7          THE COURT:  Mine is the subsequent one.  My order

8  applies.

9          MR. KING:   Is this part of what you want before you,

10  or not?

11          THE COURT:  Yes.   I will have it before me.

12          MR. KING:   The Gonzalez case, which corresponds to

13  the order I just showed you, was in 1993.  Magistrate Caden

14  set down certain cases as discovery ready.  Gonzalez was one

15  of them.  We took the deposition in Gonzalez.  The balance of

16  the cases before you today have never been set down as

17  discovery ready.  In fact, today we got authorization from

18  plaintiffs' counsel, just today, for the balance of the

19  cases.  Plainly, we need to see those medical records.

20          THE COURT:  Absolutely.

21          MR. KING:   And need time to conduct discovery, fair

22  discovery, before we know what the entire lay of the land

23  looks like for these case.

24          THE COURT:  Absolutely.

25          Give them all of the authorizations and all the

9

1  records you have in hand.

2       MR. PHILLIPS:   We have already provided the document

3  depository with the authorizations.  We will give you another

4  set, if you wish.

5       MR. KING:   The letter we got today was transmitting

6  those authorizations just today.

7       MR. PHILLIPS:   They've had them for a while, I

8  think.  We will give you another set tomorrow, whatever you

9  wish.

10      THE COURT:  Give them authorizations and open

11  everything up.  I don't want a Geressy thing again.  If I have

12  a Geressy thing again, not I, but the court, will be very

13  upset.

14      MR. PHILLIPS:   Your Honor, we will provide, as we

15  did in Geressy --

16      THE COURT:  Okay.  I don't want it repeated.

17      MR. KING:   It is my understanding that, for example,

18  the Geressy case, the punitive damage claim is out as to her.

19      THE COURT:  Correct.  As far as I am concerned, it

20  is.

21      MR. KING:   In fact, your Honor issued an order

22  stating that.

23      THE COURT:  I am not going to grant punitives in any

24  of these cases.

25      MR. KING:   The second point --

D. Pereira, OCR

10

1          MR. PHILLIPS:   I wanted to address that for a

2    moment.

3          MR. KING:   Can I finish my point?

4          MR. PHILLIPS:   I'm sorry.

5          MR. KING:   With respect to Geressy, and then I will

6    let plaintiffs' counsel speak, but I do have other things to

7    say as well.

8          In Geressy, that jury found that there was no design

9    defect as to the LK-201.  What you have before you today are

10   cases with two keyboard models, one of which is the LK-201,

11   one of which is LK-401.

12         Now, we believe that Ms. Geressy is not entitled to

13   retry the design defect claim as to the LK-201, which is the

14   only keyboard that she used.

15         THE COURT:   I will hear from the other side.

16         MR. PHILLIPS:   Your Honor's order granting a new

17   trial in Geressy granted it on all issues, because otherwise,

18   by logic, the liability finding should have stood because

19   nothing --

20         THE COURT:   Yes, I do.  I did grant it.  If there is

21   any question, clarify it.  It is a de novo case.  All of these

22   are.  Geressy will be de novo.  I am not going to, based on

23   what I know about these cases, having tried them, I am not

24   going to grant any punitive damages.

25         MR. PHILLIPS:   The only thing that I would ask, your

1  Honor, and I know you will grant, is that at the conclusion of

2  the evidence, permit me to make my arguments.

3        THE COURT:  Yes, you will.

4        MR. PHILLIPS:   And endeavor to persuade you, not

5  only of the wisdom of it, but of the same wisdom as existed

6  last time, which is putting it to a jury so that even if your

7  judgment was contrary to the Circuit's, it would be

8  preserved.  I think we will cross that bridge --

9        THE COURT:  It is always open to new evidence and to

10  new consideration.

11        Okay.

12        Now, the question is when we put these on.  All of

13  these cases together will take how long for the plaintiffs'

14  case?

15        MR. KING:   May I be heard also before we schedule

16  anything?

17        I want to make sure the record is clear what Digital

18  feels about what you've stated is a procedure where these

19  cases will be tried together but not consolidated.

20        THE COURT:  Correct.

21        MR. KING:   I am not exactly sure of the distinction

22  your Honor is drawing.  I feel that, in essence, what we are

23  looking at is a consolidated procedure of some form where all

24  cases will be tried together for all purposes except for

25  punitive damages, as your Honor just stated.

12

1          We believe, your Honor, that the plaintiff has the

2     burden here to show that there are common questions of fact.

3     I have read their affidavit.

4          THE COURT:  There can't be any doubt about it, having

5     tried it.  There is a basic question of liability here.

6          MR. KING:    Let me see if I can persuade your Honor.

7     What they have shown here is that some plaintiffs used LK-201,

8     some plaintiffs used the LK-401, and these plaintiffs claim an

9     array of upper extremities ranging from pinched nerves in the

10    neck to finger conditions all the way up and down the upper

11    extremity.

12          It is not our burden to show differences.  I don't

13    think that saying that they used the keyboard and they claim

14    these injuries is enough similarity here to warrant the

15    procedure your Honor envisions.  I know you've tried a number

16    of these cases.  We've been before you on three of those.

17          What I think the court has seen, and certainly saw in

18    the case that we were part of, is that these cases are

19    extremely fact specific, that even if you believe what their

20    experts say causes these things, that there are numerous facts

21    besides the keyboard, besides just typing, whether it be the

22    height of the chair, the desk, how you hold your hands,

23    although no one can define what angle your wrists should be

24    while typing.

25          We are looking at here, before the court today, at

D. Pereira, OCR

13

1 plaintiffs' with different work sites, because these are cases

2 about work and the work environment, different injuries.  Some

3 of the plaintiffs here on the Lipsitz Green side of it claim

4 in their complaints cumulative trauma injury.  We don't know

5 what those are.

6       THE COURT:  What does "cumulative trauma" mean?

7       MR. KING:   I don't know.  That is what is in the

8 complaints.  I don't think that's enough.

9       THE COURT:  They will explain what they mean.

10       MR. KING:   Different alternative causes, different

11 dates of injury, which will require or necessitate different

12 dates of notice, different documents, coming in for different

13 purposes.

14       THE COURT:  If I try these together, I will save

15 several hundred hours of duplicative expert testimony.  We do

16 not have time in this court to repeat over and over and over

17 again this expert testimony.

18       MR. KING:   That is my next point, your Honor,

19 because I want to address what you just said.

20       THE COURT:  The expert testimony, apart from the

21 medicals and so on with respect to the individuals, overlaps

22 to the point that there isn't any doubt in my mind, having

23 seen these cases and gone through them, that it will save at

24 least several hundred hours.  I consider it will save no less

25 than one to two months of trial time.

14

1      These cases have to be disposed of.

2      MR. KING: Your Honor, you bring me to my next point

3  that I was going to make.  This is the larger point here.  I

4  have heard from you, I have heard from you in chambers, we

5  have all heard that you just don't want, don't feel it

6  necessary, and as you just say now, you don't envision the

7  same material being tried over and over and over again.

8      I understand your concern.  Digital understands your

9  concern.  We believe, and I just want to make sure our

10  position is clear, that these cases are more properly venued

11  in a Workers' Compensation setting, not a products liability

12  setting, if we look at what has happened in New Jersey.

13      THE COURT:  Of course.

14      MR. KING:   I think your Honor has some inkling.

15      THE COURT:  Of course they should be in Workers'

16  Compensation.  I don't have any doubt about it.  The reason I

17  had originally set all these cases together was that I hoped

18  that between OSHA and Workers' Compensation and the various

19  manufacturers, a proper protocol would be worked out to

20  prevent more cases coming in, and these cases would be

21  disposed of by a proper allocation of liability, in essence to

22  what I consider OSHA's failure, if it existed, the defendant's

23  failure, and the failure of the employer as embodied and

24  protected, of course, by Workers' Compensation.  I can't do

25  that now.

D. Pereira, OCR

1         These cases have all been separated.  These cases

2    would have been settled three years ago or whenever the Second

3    Circuit came down and required us to unravel them all.  The

4    result of all of this has been, as you know, an enormous

5    increase in transactional costs.  Your firm and you are

6    wonderful lawyers.  I thoroughly enjoy having you before me.

7    Your firm has probably made millions of dollars in fees.  The

8    plaintiffs have expended an enormous fund.  They are going to

9    want to get a whole third or whatever instead of getting a

10   more reasonable settlement fee.

11         We can't continue to have these drag on.  These

12   women, if they are injured, are entitled to get compensation.

13         MR. KING:   They should get it in Workers'

14   Compensation --

15         THE COURT:  I can't do that.  I don't make the law.

16         MR. KING:   -- not in the products liabilities

17   setting.

18         THE COURT:  I don't make the law.  You have a

19   governor here now, Governor Pataki, who agrees with you.  He

20   has attempted to modify, in a variety of ways, the Workers'

21   Compensation law to prevent these runarounds to the

22   manufacturer of the instruments.  That hasn't been

23   accomplished.  If you want to, call Albany, go to Washington,

24   straighten it out.  I am happy to see that happen, because I

25   agree with you.

D. Pereira, OCR

16

1        MR. KING:   I recognize that, your Honor.  You say

2   you don't make the law.  Look at what is happening in the

3   State of New Jersey for our keyboard product liability cases.

4   I know your Honor is aware of that, because your Honor cited

5   the Reiff opinion in your Honor's-- in the Geressy opinion.

6        In New Jersey you have the Reiff case and two recent

7   trial court decisions which were affirmed by the Third Circuit

8   saying that as a matter of law there is no duty to have a

9   warning on the keyboard.  As Judge Irenas said in Reiff, it is

10  like putting a warning on a snow shovel.  It doesn't make

11  sense.

12       THE COURT:  Right.

13       MR. KING:   The Third Circuit affirmed two recent

14  cases dismissing these cases.

15       THE COURT:  That's the Court of Appeals of the

16  federal system, I suppose, interpreting what the state law is.

17       MR. KING:   Yes.

18       THE COURT:  Interpreting New Jersey law.  They may be

19  right or wrong; I don't know whether they are.  I don't know

20  enough about New Jersey law.  I hardly know anything about New

21  York law.  As far as New York law is concerned, the cases

22  remain.

23       Now what is happening with the appeal to the Second

24  Circuit?

25       MR. KING:   That is my next point.

D. Pereira, OCR

17

1          THE COURT:  Has it been set for argument?

2          MR. KING:   No earlier than February 2nd.  February

3   2, your Honor.

4          We do have a decision in the Western District of New

5   York which dismissed the case against Digital on the same

6   grounds that the Circuit affirmed in the two New Jersey

7   cases.  My point is --

8          THE COURT:  There is no court I admire more than the

9   Western District of New York --

10         MR. KING:   I understand, your Honor.

11         THE COURT: -- except for the Second Circuit and New

12   York Court of Appeals and the Supreme Court of the United

13   States.

14         MR. KING:   I understand, your Honor.  I will address

15   the Second Circuit point in a second.

16         Just to finish the thought.  The answer here is, your

17   Honor is dismissing the cases.

18         THE COURT:  I am not going to dismiss them.  If you

19   want to make a motion, make it.

20         MR. KING:   I look forward to making that motion.

21          THE COURT:  I look forward to receiving it.  But I

22   don't have a motion before me.  I have a series of cases

23   before me, which, except for the one that was just slipped

24   into court, and I don't use the word "slipped" in any

25   denigrating or derogatory sense, just a time problem.  I have

D. Pereira, OCR

18

1   cases that should be ready for disposition.  They are old

2   cases.

3          Now, how long will these take to try?

4          MR. PHILLIPS:   Your Honor, the last group took a

5   shade over three weeks.  Your Honor had a truncated schedule.

6          THE COURT:  How long will they take to try?

7          MR. PHILLIPS:   Three full weeks, in my view.

8          THE COURT:  That's not right.  Five weeks.  I will

9   give them five weeks.

10         When do I have five weeks; April?

11         MR. KING:   We need a lot of discovery here.

12         THE COURT:  You are going to get everything.

13         THE CLERK:  April 20.

14         THE COURT:  April 20th for trial.  Refer to the

15  magistrate judge for expedited discovery.  I don't want the

16  plaintiffs to drag their heels.  If they do drag their heels I

17  am going to dismiss the case, I am telling you right now, for

18  failure to prosecute.

19         It is time to fish or cut bait on these cases, if you

20  will permit such a crude term, but you have to bear in mind I

21  come from an island where we dig clams and go fishing for our

22  livelihood.

23         MR. KING:   I would be remiss in saying, your

24  Honor --

25         THE COURT:  During the course of these proceedings,

D. Pereira, OCR

1   if it comes to the attention of the defendant or the

2   plaintiffs or the magistrate Judge that some of these cases

3   ought to be separated for one reason or another, we will

4   reconsider this whole thing.  I want these cases disposed of.

5   It is time to clean them up.

6        MR. KING:   Your Honor, you had asked about the

7   Second Circuit appeal.  I wanted to finish the thought because

8   I think it is important that the court know, and then I have

9   one other point I want to make, and that should be it.

10       The argument is scheduled for no earlier than

11   February 2nd.  That's what the scheduling order is.

12       THE COURT:  Tell the Court, when you argue it, what I

13   have done and tell the Court that if they are going to order

14   them dismissed, I would like to know it.

15       MR. KING:   I want you to know, your Honor, just so

16   you know what is in that appeal, because at least in our

17   office we are --

18       THE COURT:  That's from my judgment, right?

19       MR. KING:   Yes.  At least in our office we were very

20   surprised that the Second Circuit didn't take the question one

21   that you had certified in the Geressy --

22       THE COURT:  Yes.  I wasn't surprised but I was

23   disappointed.

24       MR. KING:   Yes.  We, frankly, were surprised and a

25   little disappointed as well.  However, that issue will be

20

1  squarely before the Court in the Rotolo appeal as well as

2  another evidentiary point that we made as well on the showing

3  of another company's videotape.

4          THE COURT:  That's right.  Yes.

5          MR. KING:  Certainly we would like that appeal

6  guidance from the Second Circuit as to what the contours of

7  this case should be, if it indeed should exist at all.

8          THE COURT:  You can bring it to their attention.  Why

9  don't you order a copy of the transcript of the argument.

10  Sometimes they give you a preview.

11          MR. KING:  We will be there.

12          THE COURT:  They take a recording which you can

13  order, don't they?

14          MR. PHILLIPS:  Yes.  I think we --

15          MR. KING:  And supply the court with it.

16          THE COURT:  I am suggesting if you can get some

17  indication, I will be happy to hear it.

18          MR. KING:  To the extent the question and answer at

19  the argument can give the Court any indication, we will be

20  happy to supply it.  I want to, you know, know those issues

21  are before the court.  We may very well end up, if we don't

22  have guidance, we may very well end up seeing evidence that in

23  the Rotolo appeal the court will rule the jury should never

24  have seen.

25          THE COURT:  I will look at February 2nd, whatever.

D. Pereira, OCR

1   If February, March -- we have April 20th.

2   They could decide this case a hundred times over.

3   What else have they got to do?

4   MR. KING:   I understand.   I wanted your Honor to

5   know the schedule.

6   The final is, if what ends up is a case where all

7   cases are tried together for all purposes, I do not think,

8   Digital does not think that is a fair procedure.   I have a

9   great trust and faith in the jury system.   That becomes so

10   complicated and so cumbersome given all the differences we

11   know exist in this case.

12   THE COURT:   I don't believe that was the experience

13   here.   If it should turn out that that is it, I will

14   reconsider this whole problem.

15   MR. KING:   Thank you, your Honor.

16   May I just have a second.

17   We did move for a stay of any trial pending any

18   decision of the Second Circuit.

19   THE COURT:   Denied.

20   MR. KING:   I have addressed that.

21   THE COURT:   You want an order.   Submit it, and I will

22   sign it so you will have the document.   Try to agree with the

23   plaintiffs' counsel.

24   MR. KING:   We are anticipating we would like to

25   make, and I alluded to this earlier, motion stopping plaintiff

22

1  Geressy on the design defect claim.

2           THE COURT:  Okay.  Make it.  You will have to brief

3  it.  I am not prepared to do that at this moment.

4           MR. KING:   I understand.  I understand.

5           Thank you, your Honor.

6           MR. PHILLIPS:   Your Honor, the only observation I

7  would make is that I would hope that -- I am sure that the

8  magistrate will address this -- that we arrive at a sensible

9  approach to getting this discovery done in an expedited way.

10  A concern that we've had, generally, and I am not pointing a

11  finger, at all, at Mr. King, but it is a concern that

12  oftentimes the defendants make their depositions of the

13  plaintiffs go day after day after day.

14           MR. KING:   I have never done that.  Never done that.

15           THE COURT:  I am sure they don't do that.

16           MR. KING:   We haven't had a deposition go two days

17  max.  That's it.

18           THE COURT:  You have a fine magistrate judge.

19  Fortunately, we have excellent plaintiffs' counsel and defense

20  counsel.  I don't look forward to any non-professional

21  activities.

22           MR. KING:   Thank you, your Honor.

23           MR. PHILLIPS:   Other than that, I have nothing

24  further.

25           MR. SOLOMON:   Nothing further.

D. Pereira, OCR

23

1          MR. KING:   I do have one thing.  Do we have a date

2     by which we have to file dispositive motions?

3          THE COURT:  I haven't given you any.

4          MR. KING:   Does your Honor want to set one now?  I

5     am sure we will be before the court in between now and then

6     sometime.

7          THE COURT:  I have no reason to do so.

8          MR. KING:   Thank you, your Honor.

9          THE COURT:  You know what the target date is.

10         Do you want the jury selected by the court rather

11    than the magistrate Judge?  I prefer the magistrate judge,

12    because I can go on doing other things.

13         Think about it, discuss it with your clients.

14         MR. KING:   I will think about it.

15         THE COURT:  Let us know.

16         Did we have a written questionnaire last time?

17         MR. KING:   We did.  I will think about that as well.

18         THE COURT:  Think about how big a panel you want.  We

19    don't want too big a panel.  On the other hand, I don't want a

20    panel that doesn't give you an appropriate number of jurors to

21    challenge.

22         MR. KING:   We will work all that out.

23         THE COURT:  Okay.  Anything else?

24         Thanks very much, everybody.  Have a wonderful

25    holiday.  Thank you, as always, for your help.

D. Pereira, OCR